**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**CAROLYN DAWN JONES,**

      **Plaintiff,**

                               **Civil Action 2:17-cv-1062**
      **vs.**                        **Judge Algenon L. Marbley**
                               **Chief Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

<u>**ORDER and**</u>
<u>**REPORT AND RECOMMENDATION**</u>

Plaintiff, Carolyn Dawn Jones, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits and supplemental security income. This matter is before the Chief United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Memorandum in Opposition (ECF No. 18), Plaintiff's Reply (ECF No. 19), and the administrative record (ECF No. 12). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

Because the parties have adequately presented the facts and legal arguments in their briefs, Plaintiff's request for oral argument (ECF No. 13) is **DENIED**.

# I.    BACKGROUND

Plaintiff applied for security disability insurance benefits and supplemental security income in June 2014, asserting that two deteriorating discs at L3-L4 and L4-L5, back pain, muscle spasms, neuropathy, emphysema, anxiety, and depression constitute a disability, which began on March 15, 2014.  (R. at 204-08, 209-17, 255.)  Plaintiff's applications were denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  (R. at 144-45.)  Administrative Law Judge Carrie Kerber ("ALJ") held a video hearing on January 11, 2017, at which Plaintiff, who was represented by counsel, appeared and testified.  (R. at 44-66.)  A vocational expert also appeared and testified at the hearing.  (R. at 67-71.)  On February 8, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 18–34.)  On October 16, 2017, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1–6.)  Plaintiff then timely commenced the instant action.

## II.    HEARING TESTIMONY

### A.    Plaintiff's Testimony

At the administrative hearing, Plaintiff testified that she lived with her mother.  (R. at 45.) She had a driver's license but did not drive to the hearing. A friend brought her for the hour-long drive, in which she testified that her "back was hurting real bad."  (R. at 46.)  She does not drive long distances.  (*Id.*)

After discussing her job history, Plaintiff testified that she believes she cannot work due to her back.  "My back, it swells up real bad.  I have real sharp pain in my back.  It goes down to my right leg.  My right leg locks on me [] and I can't get it to move.  If I sit too long of a time

my back hurts. If I stand too long of a time my foot locks up and I can't put pressure on it." (R. at 57.) Plaintiff rated her pain severity at a level of 8 on a 0-10 visual analog scale. (R. at 59-60.) Plaintiff also testified to suffering from chronic obstructive pulmonary disease (COPD), she uses inhalers and smokes a half-a-pack of cigarettes a day. (R. at 58.)

Plaintiff estimated that she can stand for approximately 20 minutes, sit for approximately 20-25 minutes, and walk for 1-2 blocks. (R. at 57-58.) She can lift approximately 5 pounds or a gallon of milk. (R. at 59, 63.) Plaintiff walks with a limp on her right leg. (R. at 66.)

She spends a typical day watching TV and lying down. Plaintiff testified that she spent "half the day" lying on her back with a pillow between her legs to relieve her pain. (R. at 61.) Plaintiff is able to feed and dress herself, do basic housework, attend doctor's appointments independently, shop independently, and care for her dog without assistance. (R. at 62-64.) She likes to read cook books and play bingo, even though she cannot sit for a long period of time. (R. at 65.) Plaintiff testified that she visits with friends "probably twice a week." (*Id.*) She reported having no problems getting along with others. (*Id.*)

**B.      Vocational Expert Testimony**

Before the vocational expert ("VE") testified at the administrative hearing, Plaintiff's counsel objected to him being deemed an expert in the area of determining job numbers. Plaintiff's counsel asked the VE to explain the methods that he uses to come up with job numbers. The VE responded, "I use the Bureau of Labor Statistics data. I use the O*NET and other federal government publications, including the Occupational Outlook Quarterly and I perform minimally three time per week labor market surveys for the States of Michigan and Ohio, contacting employers. I also look at various help wanted websites

in my work as a vocational rehabilitation counselor, assisting people into placement into employment." (R. at 68.) The ALJ overruled Plaintiff's counsel's objection finding the VE duly qualified based upon the information in the file and his testimony. (*Id.*)

The VE testified that Plaintiff's past relevant work includes work as a nurse's aide, a medium semi-skilled job; a packer, a medium, unskilled job; and a picker, a medium, unskilled job. (R. at 68-69.)

The ALJ proposed a series of hypotheticals regarding Plaintiff's residual functional capacity ("RFC") to the VE. (R. at 69-70.) Based on Plaintiff's age, education, and work experience and the RFC ultimately determined by the ALJ, the VE testified that Plaintiff could not perform her past relevant work, but could perform approximately 555,000 unskilled, light jobs in the national economy such as a packer, sorter, and inspector. (R. at 69.) The VE also testified that if the hypothetical individual would be off tasks 10% of the workday or miss more than one day of work a month, it would be work preclusive. (R. at 70.)

### III.   MEDICAL RECORDS

**A.     Adil Yamour, M.D.**

Plaintiff initially treated with Dr. Yamour, on February 12, 2013 after re-acquiring medical insurance. She was seen for her history of degenerative disc disease in the lumbar spine. (R. at 507.) Plaintiff indicated to Dr. Yamour that she graduated from high school, attended technical school and was a state tested nursing assistant. ("STNA") (R. at 491.)[1] On examination, Dr. Yamour found tenderness in the lower lumbar and right hip. (R. at 508.) Dr.

---

[1] Plaintiff testified at the hearing that she did not graduate from high school and that she did not obtain a GED. (R. at 46-47.)

Yamour assessed lumbago, ordered an MRI, and Plaintiff was given medication, Tramadol. (R. at 510-11.)

A February 15, 2013, MRI of the lumbar spine showed disc desiccation and anterior spondylosis at L4-L5 with shallow disc displacement abutting but not compressing the thecal sac. The disc encroaches mildly into the floor of the foramina bilaterally. There was no evidence of nerve root compression. There was also disc desiccation and anterior spondylosis at L3-L4 with shallow protrusion. The findings result in mild narrowing of the floor of the foramina bilaterally without nerve root compression. Minimal flattening of the thecal sac by the protruding disc was noted. (R. at 516-17.)

In a March 2013 examination, Plaintiff showed a normal range of motion in the bilateral lower extremities, with no evidence of joint tenderness or evidence of muscle atrophy. (R. at 492.) In October 2013, Plaintiff was found to maintain a normal gait and station, and she exhibited no evidence of joint erythema or limitations in ambulation with slight tenderness over the lumbar spine. (R. at 458.) By January 2014, Plaintiff was found to continue to exhibit slight tenderness over the lumbar spine and right hip. Her range of motion was intact over the lower back and extremities. (R. at 439.) In April 2014, Plaintiff reported her low back hurts all of the time and she "sometimes" rated her pain as a 10 out of 10 on an analog pain scale. Dr. Yamour diagnosed chronic lumbar/lumbosacral disc degeneration and began Plaintiff on the medication, Percocet. (R. at 426.) In June 2014, Plaintiff was found to have an intact range of motion, with no evidence of joint erythema or joint tenderness, despite her complaints of ongoing pain in the lower back and right lower extremity. (R. at 416.) When seen in May 2015, Plaintiff reported joint pain but denied joint stiffness, decreased range of motion, joint swelling, and erythema of

the joints.  (R. at 677.)  Dr. Yamour referred Plaintiff to pain management for her chronic lumbar disc degeneration.  (R. at 678.)

**B.      Fayette County Memorial Hospital**

In August 2014, Plaintiff presented to the emergency department after falling on some steps which injured her low back and right shoulder.  Examination showed spasms in the right low back.  She was diagnosed with contusion of the right low back and lumbosacral strain.  (R. at 635-42.)  In September 2014, she returned to the emergency department with pain in her left shoulder and examination showed tenderness and limited range of motion.  She was diagnosed with AC joint arthralgia.  (R. at 642-52.)

Plaintiff was evaluated for pain management in July 2015 by Timothy Mellish, PA-C.  Mr. Mellish indicated Plaintiff was being evaluated for her low back pain with radiation to the right leg that had been ongoing for three years.  Plaintiff rated her pain severity at a level of 8 on a 0-10 visual analog scale and described her pain as aching, constant and exacerbated by sitting for too long, bending and driving.  Plaintiff reported her previous treatment included pain medication, baths and heating pads.  (R. at 615.)  Mr. Mellish observed tenderness along the lumbar facets worse on the right than on the left.  A FABER Patrick test on the left elicited pain in the right part to her back and straight leg raise was positive on the right for radicular pain.  Mr. Mellish diagnosed lumbar spondylosis and sacroiliitis and referred Plaintiff to physical therapy before beginning injection therapy.  (R. at 616.)

Anshuman Raj Swain, M.D., a pain management specialist, saw Plaintiff in August 2015 and noted she had been in physical therapy for two weeks and was having numbness, tingling and weakness in the right leg and left elbow.  Plaintiff again rated her pain severity at a level of 8

on a 0-10 visual analog scale which she described worsened with getting up and down and improved with medication. Dr. Swain resumed her medication, Percocet, and asked Plaintiff to complete physical therapy after which Dr. Swain would determine what injection treatment would be indicated for Plaintiff. (R. at 617.)

Plaintiff saw Mr. Mellish in September 2015, noting her pain was worse with sitting and transitioning and made better with ice. At that time, Plaintiff had completed four weeks of physical therapy and she felt it provided "some relief but not much." Plaintiff was still experiencing numbness and weakness in the left arm as well as right sided weakness. Mr. Mellish refilled Plaintiff's prescription medication. (R. at 619.) X-rays of the lumbar spine were found to be unremarkable. (R. at 618.)

Plaintiff attended 12 physical therapy sessions. Upon discharge, she subjectively reported "fair" improvement. Plaintiff was found to still have sacral torsion. It was recommended that she may benefit from more physical therapy after injections and pain is managed. (R. at 565-66.)

When Plaintiff saw Mr. Mellish in November 2015, she reported the same aggravating factors of sitting and transitioning. On examination, Mr. Mellish found tenderness in the right lumbar facet and right facet loading which produced increased pain. Mr. Mellish ordered a series of facet nerve blocks. (R. at 621-22.) The nerve blocks were administered in December 2015 by Dr. Swain. (R. at 623, 719-25.) Plaintiff reported 50% relief from the first block for two days and no relief from the second block. Her symptoms continued to be aggravated by sitting. On examination, Mr. Mellish found tenderness in the right lumbar spine, right lumbar facet loading positive for low back pain, flexion biased posture, and palpable trigger points felt

in the right lumbar muscular.  Mr. Mellish ordered a third facet block of the lumbar spine due to his belief that Plaintiff has complications with muscle spasms causing her to be unable to have relief from the second block.  (R. at 624-25.)

In January 2016, Plaintiff was dismissed from the program for failing to present for a pill count.  (R. at 560.)

**C.**     **Marta Grynuik, M.D.**

Plaintiff established care with internist, Dr. Grynuik on August 14, 2015, for chronic pain in her neck, back, upper extremities and lower extremities and decreased range of motion.  She also described left hand pain.  She described her symptoms as worsening and symptoms are exacerbated by standing and motion and relieved with rest, nonsteroidal anti-inflammatory drugs and opioid analgesics.  Dr. Grynuik diagnosed back pain and noted she was being followed by pain management.  (R. at 758-59.)

In September 2015, Plaintiff reported "incredible back pain."  Her symptoms included pain, stiffness, and decreased range of motion.  Dr. Grynuik noted Plaintiff was seen by pain management.  (R. at 753.)

In March 2016, Dr. Grynuik indicated Plaintiff was discharged from pain management due to an inability to come for a pill count.  She referred Plaintiff to a new pain management specialist, Comprehensive Pain Specialists.  (R. at 742.)  Plaintiff reported in August 2016 that she continued to have chronic low back pain with stiffness, decreased range of motion and radiation to the right leg.  (R. at 739.)  Dr. Grynuik noted that Plaintiff was taking Cymbalta from her pain specialist.  (R. at 740.)

On December 9, 2016, Dr. Grynuik, provided a medical source statement in which she noted she had been treating Plaintiff for one and half years, seeing her every two to three months for the diagnoses of back pain, depression, fibromyalgia, insomnia, osteoporosis, hyperlipidemia and COPD. Dr. Grynuik noted that Plaintiff's symptoms and limitations have lasted or can be expected to last for over twelve months, and that she would be off task more than twenty-five percent of the work day. Dr. Grynuik also believed that Plaintiff would also be absent from work more than four days per month due to her impairments and/or treatment. (R. at 832.) Dr. Grynuik opined Plaintiff can lift and carry less than ten pounds frequently, ten pounds occasionally and twenty pounds rarely, due to her bulging disc which prevents normal functioning. Plaintiff can sit for three hours, stand for one hour and walk for three hours in an eight-hour work day and will require the option to sit or stand at will, due to her becoming very uncomfortable in any body position which she is in for more than 30 minutes. Although noting that Plaintiff did not require the use of a cane for ambulation, Dr. Grynuik noted that Plaintiff would need a cane or other assistive device at least sometimes. (R. at 833.) Dr. Grynuik noted she based Plaintiff's limitations on Plaintiff's radiculopathy with weakness in the lower extremities which progresses with distance walked. Plaintiff can occasionally push and pull, and frequently reach, handle, finger and feel. She could occasionally use her feet bilaterally for foot controls due to EMG study showing impairment of nerve conduction. (R. at 834.) Plaintiff would be limited to no climbing of ladders and scaffolds, crouching or crawling, rarely balancing, stooping and kneeling, occasional climbing of stairs and ramps and frequent rotation of the head and neck, all due to nerve damage in both lower extremities. (R. at 834-35.) According to Dr. Grynuik, Plaintiff has the environmental limitations of no exposure to

unprotected heights, moving mechanical parts and extreme heat, rarely be exposed to dusts, odors, fumes, pulmonary irritants and extreme cold, occasionally be exposed to humidity and wetness and frequently be exposed to operating a vehicle and vibrations.  (R. at 835.)

**D.     Comprehensive Pain Specialists**

Plaintiff began treating with Dwight E. Mosely, Jr., M.D. at Comprehensive Pain Specialists in July 2016.  (R. at 552-57.)  Initially, Dr. Mosely found focal tenderness and muscle spasms in the paravertebral muscles and pain elicited in paraspinous and spinous percussion as well as pain palpable over the SI joints bilaterally.  Plaintiff's gait was observed to be antalgic and she had positive Faber and Patricks' test, positive facet loading, positive paraspinal tenderness, lumbar paravertebral tenderness and positive SI joint examination.  Dr. Mosely assessed lumbar radiculopathy, long-term opiate therapy, opiate dependence secondary to daily use, depression, and bilateral sacroiliitis.  He recommended additional SI joint injections in the lumbar spine and anti-inflammatory medications.  He also indicated close medication management of her narcotic medications.  He ordered an MRI and EMG.  (R. at 555.)

When seen by Dr. Mosely in August 2016, he indicated the EMG showed right and left L5-S1 radiculopathy.  Plaintiff reported her right leg was the worst of her pain.  Dr. Mosely administered an injection.  (R. at 542-46.)  Dr. Mosely administrated an epidural steroid injection on September 28, 2016.  (R. at 533.)  In October 2016, when Plaintiff was to receive her next epidural steroid injection, Dr. Mosely elected to hold off on the second injection pending an elevation by a surgeon.  (R. at 520.)  Plaintiff reported her pain was aggravated by stooping and bending, changing from sitting to standing, lifting or carry heavy and small loads and walking. (*Id.*)

**E.     State Agency Review**

In August 2014, after review of Plaintiff's medical record, Edmond Gardner, M.D., opined that Plaintiff could lift twenty-five pounds frequently and fifty pounds occasionally; stand/walk for about six hours out of eight, and sit for six hours out of eight.  (R. at 82.)  Dr. Gardner also found Plaintiff could frequently climb ramps/stairs, stoop; occasionally climb ladders, ropes, or scaffolds; with unlimited balance, kneel, or crouch.  (R. at 82-83.)  Dr. Gardner explained that his residual functional capacity findings are based on Plaintiff's history of lumbar spine degenerative disc disease.  (*Id.*)  In January 2015, Rannie Amiri, M.D., reviewed the record upon reconsideration and modified Dr. Gardner's opinion by noting Plaintiff retained the residual functional capacity to lift and carry 20 pounds occasionally, 10 pounds frequently.  (R. at 103-04.)

## IV.  THE ADMINISTRATIVE DECISION

On February 8, 2017, the ALJ issued her decision.  (R. at 18-34.)  The ALJ first found that Plaintiff met the insured status requirements through December 31, 2019.  At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1.     Is the claimant engaged in substantial gainful activity?
    2.     Does the claimant suffer from one or more severe impairments?
    3.     Do the claimant's severe impairments, alone or in combination, meet or
              equal the criteria of an impairment set forth in the Commissioner's Listing of
              Impairments, 20 C.F.R. Subpart P, Appendix 1?
    4.     Considering the claimant's residual functional capacity, can the claimant
              perform his or her past relevant work?

gainful activity since March 15, 2014, the alleged onset date. (R. at 20.) The ALJ found that

Plaintiff has the following severe impairments: lumbar spondylosis; sacroilliitis; hyperlipidemia;

COPD; and depression. (*Id.*) The ALJ determined that Plaintiff's history of substance abuse,

although the record reflects that opioid and marijuana abuse was present during the alleged

period of disability, this usage did not have a significant impact on her ability to function relative

to her physical and psychological impairments. (R. at 21.) She further found that Plaintiff did

not have an impairment or combination of impairments that met or medically equaled one of the

listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ

assessed the severity of Plaintiff's impairments by comparing the medical evidence to the

requirements of the following listings: 1.02 for Major Dysfunction of a Joint; 1.04 for Disorders

of the Spine; 3.02 Chronic Pulmonary Insufficiency; 12.04 Affective Disorders; and 12.06

Anxiety-Related Disorders. (R. at 21-24.) At step four of the sequential process, the ALJ set

forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the
> [Plaintiff] has the residual functional capacity to perform light work as defined in
> 20 CFR 404.1567(b) and 416.967(b) except: frequent climbing of ladders, ropes,
> or scaffolds; frequent stooping and crawling; and further limited to simple, routine
> tasks that are not fast paced or requiring strict production quotas, and only
> occasional exposure to respiratory irritants such as fumes, odors, dusts, gases and
> poor ventilation.

(R. at 24.) In making the above determination, the ALJ assigned Dr. Gryniuk's opinion partial

weight finding it contradicted by other medical evidence, and inconsistent with the objective x-

---

5.     Considering the claimant's age, education, past work experience, and residual
       functional capacity, can the claimant perform other work available in the national
       economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

rays and MRI scans of Plaintiff's lumbar spine.  (R. at 30.)   The ALJ also assigned partial

weight to the assessments from the state agency reviewing physicians, Drs. Gardner and Amiri.

(R. at 31.)

Relying on the VE's testimony, the ALJ concluded that Plaintiff is unable to perform her

past relevant work but she can perform jobs that exist in significant numbers in the national

economy.  (R. at 32-34.)  She therefore concluded that Plaintiff was not disabled within the

meaning of the Social Security Act.  (R. at 34.)

The ALJ noted that Plaintiff's representative filed a post-hearing brief and specifically

addressed Plaintiff's objections to the testimony and number of jobs identified by the VE.  (R. at

33.)  The ALJ addressed the objections as follows:

> However, the undersigned notes that [Plaintiff's] representative was present at the
> hearing and had the opportunity to cross-examine the witness while under oath.
> Additionally, [Plaintiff's] representative was provided with an opportunity to
> supply his own witness or vocational expert to challenge the evidence offered by
> [the VE], but failed to do so.   Pursuant to 20 CFR 404.15.1560(b)(2),
> 404.1566(d), 416.960(b)(2), and 416.966(d), a sufficient basis for vocational
> expert testimony can be found based upon the vocational expert's professional
> knowledge and experience, as well as reliance on job information available from
> various governmental and other publications.   Therefore, because [Plaintiff's]
> representative was present in the courtroom, had the opportunity to cross-examine
> the witness, and was afforded the opportunity to call his own witnesses in
> contradiction to the testimony offered by the vocational expert, the undersigned
> finds the objections to the vocational expert's testimony not well taken and denies
> the same.

(R. at 33.)

# V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial

right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

In her Statement of Errors, Plaintiff contends that the ALJ erred in relying on vocational expert testimony and impermissibly shifted the burden to Plaintiff at step 5. According to Plaintiff, the ALJ failed to adequately address the objections she raised in her post-hearing brief. Second, Plaintiff maintains that the ALJ failed to properly evaluate the opinions of her treating physician, Dr. Gryniuk. (ECF No. 13 at pp. 5-20, ECF No. 19.) The Undersigned addresses each assignment of error in turn.

### A.        ALJ's Reliance on the VE's Testimony

Plaintiff frames her first assignment of error as follows:

> [D]espite a clear obligation to do so, the ALJ in this case failed to directly address the objection made to the vocational expert's testimony regarding how the jobs the vocational expert identified (and which were relied upon by the ALJ to deny benefits, as above) are currently performed in the national economy (briefly, that when described 30 years ago in the DOT these jobs were unskilled jobs, but as currently performed, are skilled jobs). The evidence presented by Plaintiff, which derives from the Department of Labor's current resource for categorization of job data, directly contradicts the testifying vocational expert's opinion and the ALJ's reliance upon it, and the objection is facially relevant to the issue of the ALJ's step 5 burden. . . .

(Pl's Brief, at p. 2.)

Plaintiff suggests that the ALJ violated the SSA's own regulations and guidance at step 5 by failing to address her post-hearing objections to the VE's testimony. (R. 15, Pl.'s Mem. at 4-6.) This argument has no support in fact or law. As a factual matter, the ALJ did address Plaintiff's post-hearing objections and provided a narrative explanation for overruling them. (R. at 33.) The ALJ discussed Plaintiff's representative's failure to challenge the VE's testimony at

the hearing and noted that Plaintiff's representative was provided an opportunity to supply his own witness or vocational expert to challenge the evidence offered by the VE but failed to do so. The ALJ cited the various applicable regulations and concluded that vocational-expert testimony is properly supported when it is based on the vocational expert's professional knowledge and experience, as well as reliance on job information available from various governmental and other publications. For these reasons, the ALJ overruled and denied Plaintiff's objections to the VE's testimony. (*Id*.) Accordingly, as a factual matter, the ALJ did rule directly on Plaintiff's post-hearing objections.

Nor has Plaintiff shown that the ALJ violated a legal obligation set out by the SSA's Hearings, Appeals and Litigation Law ("HALLEX") manual, which, Plaintiff contends, "embodies the principles of procedural due process found in the Constitution and the Administrative Procedure Act." (Pl's Reply, at p. 2; *see also* Pl's Brief, at p. 4, n.2.) Plaintiff points to HALLEX § I-2-6-74(B)[3] which provides that at the hearing the ALJ must ask the claimant's representative if she has any objections to the VE's testimony and if so, must rule on any objections either "on the record during the hearing, in narrative form as a separate exhibit, or in the body of his or her decision." HALLEX § I-2-6-74(B). In this case, Plaintiff did not raise the objections to the VE's testimony until after the hearing. As such, this HALLEX provision does not apply.[4] Because Plaintiff did not raise the objections at the hearing and because the ALJ specifically addressed her post-hearing objections in the body of her written decision,

---

[3] Available at https://www.ssa.gov/OP_Home/hallex/I-02/I-2-6-74.html
[4] Plaintiff also cites to HALLEX § I-2-5-30, available at https://www.ssa.gov/OP_Home/hallex/I-02/I-2-5-30.html (Pl. Brief at p. 4.) This provision also relates to hearing objections and indicates that the "ALJ will respond to any objections, either in writing or on the record at the hearing." Again, because Plaintiff did not raise the objections at

Plaintiff has not shown that the ALJ violated any obligations established by HALLEX. *See Horner v. Berryhill*, No. 17 C 4823, 2018 WL 1394038, at *2 (N.D. Ill. Mar. 20, 2018) ("Because HALLEX does not compel an ALJ to rule on objections to VE testimony posed after a hearing has ended, the ALJ's failure to do so in this case was not erroneous."); *Owens v. Berryhill*, 17-cv4824, 2018 WL 3303274, at *2 (N.D. Ill. July 5, 2018) "Here [plaintiff] did not raise the relevant objections to the VE's testimony until after the hearing, so the cited HALLEX provision does not apply."); *Rockholt v. Berryhill*, 2018 WL 4462231, at *7 (W.D. Okla., 2018) (collecting cases).

At bottom, Plaintiff maintains that the ALJ erred by failing to address her rebuttal evidence regarding her ability to perform the light, unskilled jobs of packer, sorter or inspector, as the VE concluded, and that those jobs as described in the DOT are outdated and fail to reflect the positions as they are now generally performed.[5] Yet, Plaintiff could have cross-examined the VE to elicit testimony as to her ability to perform the requirements of a packer, sorter or inspector, but did not. Plaintiff has thus waived her challenge to the testimony. *See Slone v. Berryhill*, 2018 WL 5729591 at *5 (N.D. Ind. Nov. 1, 2018) ("Had [plaintiff]'s attorney actually questioned the VE's testimony on this topic at the hearing, the VE could have said more about the resources and her methodology. Claimants may forfeit arguments concerning vocational

---

the hearing, this provision also does not apply.

[5] Plaintiff fails to acknowledge that the VE did not rely exclusively on the DOT and considered O*NET, other federal governmental publications including Occupational Outlook Quarterly, multiple weekly labor market surveys and various help-wanted websites. Even if the VE had not reviewed other materials, in the Sixth Circuit, an ALJ may "rely solely on the vocational expert's testimony[,] . . . [because the] regulations do not require the [Commissioner] or the [VE] to rely on classifications in the [DOT]." *Conn v. Sec'y of Health & Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995).

expert testimony by failing to object to the testimony during the hearing."); *Gassler v. Berryhill*, 2019 WL 945972, at *3 (S.D. Ga., 2019) (same).[6]

In any event, even if the Court were to assume that the ALJ failed to follow the HALLEX, the Undersigned concludes that the error was harmless. While the HALLEX procedures are binding on the Social Security Administration, they are not binding on courts in conducting their review of the administrative proceedings. *See Bowie v. Commissioner of Social Security,* 539 F.3d 395, 399 (6th Cir. 2008) (observing that the procedural guidance in HALLEX is "not binding on this court"). Moreover, the agency procedures set forth in HALLEX, in and of themselves, do not create federal due process rights for claimants. "No circuit has held that the HALLEX creates *constitutional rights* because, of course, only the Constitution, not an agency's rules or procedures, is the source of such rights." *Davenport v. Astrue,* 417 F. App'x 544, 547–48 (7th Cir. 2011); *Engelhart v. Comm'r of Soc. Sec*., No. 2:15-cv-2017, 2017 WL 780606 (S.D. Ohio March 1, 2017) (noting no procedural due process rights arise from HALLEX procedures and consequently, "even if the Commissioner failed to follow HALLEX procedures, such a fact would not necessarily entitle [plaintiff] to relief."); *Dukes v. Commissioner of Social Sec*., 2011 WL 4374557, at *9 (W.D. Mich., 2011) (same).

Plaintiff attempts to nuance her stance by indicating she is not arguing that HALLEX *creates* a due process right but rather is asserting that HALLEX "embodies the procedural due process found in the Constitution and the Administrative Procedures Act." (Pl's Reply at p. 2.) The Undersigned finds this argument unpersuasive. Plaintiff still has not demonstrated that the ALJ violated the letter of HALLEX, that she sufficiently preserved her objections, or that there is

---

[6] Plaintiff was given the opportunity to call additional witnesses (R. at 42) and could have

a cognizable claim in this Court for violation of HALLEX.  For these reasons, it is **RECOMMENDED** that the Court **OVERRULE** this assignment of error.

## B.  ALJ's Assessment of Plaintiff's Treating Physician

Plaintiff next contends that the ALJ erred when she failed to evaluate the opinions of Plaintiff's treating physician in accordance with SSA policy and Sixth Circuit precedent.  The Undersigned concludes that the ALJ properly evaluated and discounted the opinion of Plaintiff's treating physician, Dr. Grynuik.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 416.927(c).  The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ."  20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009).  If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight."  20 C.F.R. § 404.1527(c)(2).

---

called her own vocational expert, but did not take advantage of these options.

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id*. Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 Fed. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision.  *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity.  20 C.F.R. § 404.1527(d).  Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance.  20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Here, the ALJ acknowledged that Plaintiff with Dr. Grynuik for approximately one and a half years.  (R. at 29.)  Nevertheless, the ALJ assigned only partial weight to the opinion of Dr. Grynuik.  In making this finding, the ALJ concluded that her opinion was not entitled to controlling weight:

> [B]ecause objective medical records from Dr. Grynuik's office and the medical records from Comprehensive Pain Specialists contradict her finding that the [Plaintiff] can only rarely lift and carry up to 20 pounds, sit for 3 hours, and stand for 1 hour secondary to lower back pain.  Furthermore, the [ALJ] notes that the opinion of Dr. Gryniuk is generally inconsistent with the objective x-rays and MRI scans of [Plaintiff's] lumbar spine, which show that she has only mild evidence of degenerative disc disease.  Additionally, the [ALJ] notes that the opinion of Dr. Gryniuk is inconsistent with the treatment notes from Fayette County Memorial Hospital, which show that [Plaintiff] was found to have essentially no evidence of upper extremity limitations that would warrant a limitation on reaching, handling and fingering.  Moreover, the [ALJ] notes that the opinion of Dr. Gryniuk is inconsistent with records from her own office, which show that she required only minimal treatment for her symptoms of depression and anxiety.  However, the [ALJ] notes that Dr. Gryniuk's opinion is generally consistent with the medical records from the Fayette County Memorial Hospital and Comprehensive Pain Specialists, which show that she did receive

ongoing treatment for symptoms of lower back pains that did interfere with her level of functioning. Therefore, based upon the foregoing, the [ALJ] gives only partial weight to the opinion of Dr. Gryniuk.

(R. at 30.)

According to Plaintiff, this explanation is deficient for several reasons. Plaintiff first faults the ALJ because she did not mention that Dr. Grynuik is "likely to be the medical professional[] most able to provide a detailed, longitudinal picture of his medical impairment(s)." (Pl's Brief at pp. 13-14.) Plaintiff also suggests that the ALJ's reasoning is defective because she did not expressly find that Dr. Gryniuk had "reasonable knowledge" of Plaintiff's impairments. (*Id*.) Neither of these arguments has merit.

Contrary to Plaintiff's apparent opinion, the ALJ is not required to discuss, let alone quote, all the regulatory factors when evaluating medical opinions. *Francis v. Comm'r of Soc. Sec*., 414 F. App'x 802, 804 (6th Cir. 2011) ("Although the regulations instruct an ALJ to consider these factors, they expressly require only that the that the ALJ's decision include 'good reasons . . . for the weight . . . give[n] [to the] treating source's opinion'—not an exhaustive factor-by-factor analysis.); *see also* SSR 06-03p 2006 WL 2329939 at *5 ("Not every factor for weighing opinion evidence will apply in every case.") Here, the ALJ cited to the treating physician rule and recognized that Dr. Gryniuk was Plaintiff's treating physician. (R. at 29-30.) The ALJ also noted the length of that treating physician relationship, acknowledging that Plaintiff treated with Dr. Gryniuk for approximately one and one-half years. (R. at 29.) The ALJ was aware of the frequency of the examinations, as evidenced by the fact that she referenced and discussed Plaintiff's examinations with Dr. Gryniuk at length. (R. at 26-27.) While discussing Dr. Gryniuk's treatment notes, the ALJ noted that Plaintiff required only conservative treatment for

her symptoms of COPD, anxiety and depression. This discussion demonstrates that the ALJ was aware of the nature and extent of the treatment relationship. (R. at 28-29.) The ALJ also considered the consistency of Dr. Gryniuk's opinion with other evidence in the record. (R. at 30.) Put short, the ALJ discussed the relevant factors when evaluating the opinion of Dr. Gryniuk. 20 C.F.R. § 404.1527(c).

Plaintiff also criticizes the ALJ's evaluation because she did not mention that Dr. Gryniuk is board certified in internal medicine. (Pl's Brief at p. 14.) As set forth more fully below, however, the ALJ adequately supported her decision to discount Dr. Gryniuk's opinion based on other factors, which the ALJ evidently found more compelling than the doctor's board-certified training.

The ALJ provided good reasons for not affording Dr. Gyniuk's opinion controlling weight and the reasoning is supported by substantial evidence. For instance, the ALJ noted that Plaintiff had required only conservative treatment symptoms of COPD, anxiety and depression and therefore reasonably concluded that Dr. Gyniuk's opinion was not entitled to controlling weight. *See Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (concluding that ALJ reasonably discounted a doctor's opined limitations where, among other things, the claimant was receiving conservative treatment).

The ALJ also concluded that Dr. Gryniuk's opinion was inconsistent with the medical evidence, including her own treatment notes. Substantial evidence supports this conclusion. Records from Comprehensive Pain Specialists, Fayette County Memorial Hospital, X-rays and MRI scans that show only mild degenerative disc disease and little to no limitations in her upper extremities. Although she placed significant limitations on Plaintiff's abilities, Dr. Gryniuk's

own notes reflect that she required only minimal treatment for her symptoms of depression and anxiety. The ALJ reasonably discounted the opinion of Dr. Gryniuk because it was not consistent with other substantial evidence in the record including objective diagnostic tests, her own office notes and treatment notes from other medical sources. Although the record reflects that Plaintiff had some limitations, it does not support the limitations noted in Dr. Gryniuk's opinion, namely that Plaintiff could rarely lift and carry up to 20 pounds, sit for 3 hours and stand for 1 hour. These are good reasons and the ALJ reasonably concluded that Dr. Gryniuk's opinion was not entitled to controlling weight. *See Cosma v. Comm. of Soc. Sec.*, 652 F. App'x 310, 311 (6th Cir. 2016) (holding the ALJ reasonably gave no weight to doctor's opinion in part because it conflicted with the objective medical evidence in the record and the doctor's own treatment notes); *Warner v. Comm. of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004) (finding it was proper to reject doctor's conclusion regarding plaintiff's limitations when it was inconsistent with the substantial evidence in the record indicating otherwise); *see also* Social Security Ruling 96-2p ("Even if well-supported by medically acceptable clinical and laboratory techniques, the treating source's medical opinion also must be 'not inconsistent' with the other 'substantial evidence' in the individual's case record.") For these reasons, it is **RECOMMENDED** that the Court overrule Plaintiff's second assignment of error.

## VII.   CONCLUSION

For the foregoing reasons, For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

Because the parties have adequately presented the facts and legal arguments in their briefs, Plaintiff's request for oral argument (ECF No. 13) is **DENIED**.

## VIII.   PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED**.

Date:  June 18, 2019

           /s/ *Elizabeth A. Preston Deavers*
Elizabeth A. Preston Deavers
Chief United States Magistrate Judge